GEORGE NAYLOR and THOMAS SANDERSON *against*
NICOLL FOSDICK.

*A.*, being in
failing circum-
stances, exe-
cuted a deed
of assignment
of certain cre-
dits to *B.* in
trust for the
benefit of all
*A.'s* creditors
in proportion
to their re-
spective
claims. Two
schedules
were annexed
to the deed of
assignment,
the first spe-
cifying the
names of se-
veral credit-
ors, and con-
cluding thus:
" and others,
to the number
of about twen-
ty creditors;"
the other spe-
cifying several
debtors, with
the amount of
their respec-
tive debts, and
concluding
thus: " and
many more, to
the amount of
more than ten
thousand dol-
lars." The as-
signment was
made *bona
fide*, and due
notice given to
the debtors.
The creditors
named in the
schedule had

MOTION for a new trial.

This was a *scire facias* against the defendant as gar-
nishee of *Gurdon Manwaring*, of *New-York*, an absent
debtor. The defendant pleaded that he was not the
agent or debtor of *Manwaring*, and had none of his ef-
fects in his hands. On trial to the jury before the supe-
rior court, it appeared that the previous proceedings had
been conformable to the statute regarding foreign attach-
ments,(a) and that the defendant was indebted to *Man-
waring*. The defence was, that this debt had been as-
signed before the copy was left in service. The circum-
stances under which the assignment was made were
these: *Manwaring*, being in failing circumstances, exe-
cuted a deed of assignment of debts due to him from
sundry persons, of which the debt due from the defend-
ant was one, to *John Mowatt*, jun. of *New-York*, in trust,
for the benefit of all *Manwaring's* creditors. This as-
signment was made *bonâ fide*, and was also made without
the knowledge of the creditors. The defendant had
due notice. None of the creditors named in the sche-
dule attached to the assignment, whose debts amounted to
a large sum, dissented to the assignment, except the
plaintiffs; and they did dissent. *Mowatt* was agent to a
number of the creditors, at the time of the assignment;
he accepted the trust, and had collected part of the debts
assigned. The substance of the deed of assignment was
as follows: That whereas sundry persons in *Connecticut*,

(a) *Stat. Conn.* tit. 14. c. 3.

no knowledge of the assignment at the time it was made, but none of them afterwards
dissented, except *C.*, who did dissent. *B.* was agent to a number of the creditors;
he accepted the trust; and proceeded to make collections. Held that this assignment
was void in law, and that *C.* was entitled to recover the credits assigned by process of
foreign attachment.

*Rhode-Island, Massachusetts, New-Hampshire* and *Vermont*, are indebted to me, *Gurdon Manwaring*, in certain sums, a list of which debtors appears in the schedule annexed; and whereas I, said *Manwaring*, am indebted to several persons, whose names also appear in the schedule: therefore, I, said *Manwaring*, in consideration of one dollar paid me by *John Mowatt*, jun. of *New-York*, and for divers other good considerations, assign to said *Mowatt* all said debts and sums due to me from any persons in any of said five states, and all securities taken for the same: to have and to hold, recover and receive all said debts and sums mentioned, or intended so to be, with all their appurtenances and securities, to said *Mowatt*, his heirs, executors, administrators and assigns for ever: in trust, that said *Mowatt*, his executors and administrators, shall take all lawful ways, without delay, to recover and receive all said debts, and after deducting all reasonable charges and expenses, the said *Mowatt*, his executors and administrators, shall pay, divide and distribute the same with and among the creditors of said *Manwaring*, equally and proportionably, according to their respective debts. And said *Manwaring* further constitutes said *Mowatt*, his executors and administrators, his true and lawful attorney, in his name to recover said debts, compound for them with the debtors, and execute sufficient discharges, as they shall see fit; and empowers said *Mowatt*, his executors or administrators, to substitute an attorney or attorneys under him, for said purposes, or any of them, and at his pleasure to revoke; and generally, to do all lawful acts for the speedy recovery of said debts.

The schedules annexed were in these words:

" A list of the creditors of *Gurdon Manwaring*,
                                    *John Forsyth*,
                                    *Gurdon* and *Daniel Buck*,
                                    *Israel Hairland*,
                                    *Lemuel Wells & Co.*,
                                    *Elijah Simons*,
and others, to the number of about twenty creditors.
            (Signed)                *Gurdon Manwaring.*"
" A list of debts due *Gurdon Manwaring*, viz.

| | |
|---|---:|
| *Bill & Overton, Chatham, Con.* | $222  2 |
| *Guy Turner, Montville, Con.* | 125  95 |
| *Nicoll Fosdick, New-London, Con.* | 521  95 |

and many more, to the amount of more than ten thousand
dollars.
            (Signed)                *Gurdon Manwaring.*"

The court charged the jury that the law was, that the
assignment was void and of no effect.  The plaintiffs ob-
tained a verdict and judgment in their favour.  The de-
fendant moved for a new trial on the ground of a misdi-
rection; and the court reserved the question for the
consideration of the nine judges.

*Goddard* and *Gurley* argued in support of the mo-
tion.

They cited *Atkin* v. *Barwick*, 1 *Stra.* 165.  *Lewkner*
v. *Freeman*, 1 *Eq. Cas. Abr.* 149. (E.) *pl.* 5.  *Tarback
et al.* v. *Marbury et al.* 2 *Vern.* 510.  *Hungerford* v.
*Earl*, 2 *Vern.* 261.  *Jacob* v. *Shepherd*, cited by Lord
*Mansfield*, 1 *Burr.* 478.  *Holbird* v. *Anderson et al.* 5
*Term Rep.* 235.  *Whitwell et al.* v. *Thompson*, 1 *Esp.* 68.
*Meux et al.* v. *Howell et al.* 4 *East*, 1.  *Roberts on
Fraud. Conv.* 491. *in notis.*  *Mather* v. *Pratt et al.* 4 *Dal.*
224.  *Johnson* v. *Bloodgood*, 1 *Johns. Cas.* 51.  *Vreden-
bergh* v. *White et al.* 1 *Johns. Cas.* 156.  *Wilt* v. *Frank-
lin*, 1 *Binn.* 502.

*Law* and *Cleaveland,* contra.

SWIFT, J. The question arising in this case is, whether a debtor in failing circumstances can make an assignment of his estate to a trustee for the benefit of his creditors, with the assent of part of them expressed either prior, or subsequent, to such assignment, which shall be valid against creditors who dissent ; so that such dissenting creditors cannot take such estate by legal process to satisfy their debts ?

I lay no weight on the objection to this assignment on account of the consideration ; for if the trustee is duly constituted with the assent of the creditors, his obligation to execute the trust, by collecting and disposing of the property, and applying the avails in payment of the debts, is a sufficient consideration.

It is no objection to the assignment that a trustee was appointed and authorized to collect the debts, and make a distribution among the creditors ; for cases may occur where it is necessary that a trustee should be appointed : as where property is so circumstanced that it cannot be taken and immediately applied in discharge of the demands of sundry creditors ; then it would be competent to appoint trustees with the assent of the creditors, who should collect and dispose of such property and distribute it among the creditors. In such cases, it may sometimes happen, that the precise amount of the debts, and value of the property cannot be ascertained ; and then it will be competent for the parties to agree that the surplus value of the property, if any, shall be returned to the debtor, or be divided among the creditors ; and though there may be a resulting trust to the debtor, yet if it be made not in a secret, but open manner, so as to appear on the face of the agreement, it will not be fraudulent : for this would be a fair stipulation intended to prevent fraud. If, however, a greater value of property should be taken than was apparently necessary for the payment of the debts, with an intent to put such pro-

perty out of the reach of other creditors, the transaction would unquestionably be fraudulent.

It is no objection to this assignment, that the trustee was not a creditor; for in cases where it is proper that a trustee should be appointed, a stranger can as well perform the duties of the trust as a creditor.

But the real objection is, that no debtor has such power over his property, as it regards his creditors, as has been exercised in the case under consideration.

A debtor has a right to sell or dispose of his estate to pay or secure his debts; but no debtor has a right to dispose of it in such manner as shall, directly or indire tly, defraud, prejudice, or delay his creditors : for it is a prominent principle of our law, that all the estate of a debtor shall be responsible to the demands of his creditors. If one purchase estate from a debtor with an intent to keep it from his creditors, though he pay the full value, the sale is fraudulent. By a parity of reasoning, if any other mode is adopted to put the estate out of the reach of creditors, the transaction is fraudulent. It is true, that a debtor may prefer creditors in the payment of his debts: for as all have an equal right, he may pay which he pleases ; and this being the payment of a debt, it will be valid, though some of the creditors, by reason of such preference, may fail to recover their debts. But this is a very different transaction from an attempt to withdraw the estate from the reach of the creditors, and to compel them to seek such remedy as the debtor shall point out.

A creditor may take or receive the estate of his debtor for the payment or security of a just demand : but no creditor can combine with a debtor to make a disposition of estate not necessary to pay or secure his debt, by which the legal rights of other creditors may be defeated or impaired without their consent; for it is a plain principle that no man has the power to vary or control the legal rights of another, without an authority, express or implied.

It is unreasonable that a debtor, with the concurrence

June, 1810.

NAYLOR
v.
FOSDICK.

of one, or a small part of his creditors, should have the power of making such an arrangement of his property; for it must be admitted, (if the principle contended for be correct,) that the assent of a single creditor will be sufficient to validate the assignment. There is the same reason why one creditor, if he assents, should have the benefit of the assignment as if two or more assent. Of course, the trustee must have the power to receive the whole estate of the debtor, and to dispose of it, and will not be responsible for it till he has paid the debt of such assenting creditor. Let us trace the consequence and operation of this principle. Suppose an insolvent debtor has a large estate in his hands, and some of his creditors for a great amount, in the exercise of a legal right, are about to levy attachments or executions upon it. At this instant, to avoid it, he assigns his whole estate to a trustee, with the assent of a creditor, for a small sum, for the purpose of an equal distribution among his creditors. On the principle assumed on the other side, the assignment would be valid, and the act of a single creditor, for a trifling sum, would control the rights of creditors to a large amount. So, if no creditor should previously assent, yet if any assented afterwards, though for the smallest sums, the assignment would be valid. There would be no difficulty in finding some who would derive sufficient advantage from such an arrangement to induce them to assent to it: and the consequence is, that every debtor would possess the power, to every substantial purpose, by his own act, to withdraw his whole estate from the reach of his creditors by legal process, and turn them round to pursue a wholly different remedy. This is a power which no debtor ought to possess over his estate or his creditors.

But it has been said, that the creditors who do not assent, have no ground of complaint, because they are under no obligation to assent, and if they do not, their rights and remedies are unimpaired. It is true, no creditor is obliged to assent; and if he does not, he is

June, 1810.

NAYLOR
v.
FOSDICK.

not compellable to claim his debt under the assignment; but it is equally true on the principle assumed, if the assignment be valid as it respects assenting creditors, that the creditors who dissent can have remedy only against the person of the debtor, or in case he absconds, they may, by process of foreign attachment, draw out of the hands of the trustee any estate of the debtor that remains after satisfying the trust. They can have no remedy against the estate of the debtor by attachment, or execution, as otherwise they might have had. This would be very materially to affect the rights and impair the remedies of dissenting creditors, by an act to which they are strangers. It is sufficient that creditors may take so much of the estate as will satisfy or secure their debts; but it can never be reasonable that they should have the power to make an agreement with a debtor, by which estate, not necessary to satisfy their demands, and to which other creditors are entitled, shall be either vested in trustees for the use and benefit of such creditors, or be withdrawn from the reach of legal process, and they compelled to seek their remedy against the person of the debtor only, or his trustees. This would be to give to one man the power to control the rights, and vary the remedies of another, without his authority or consent.

Again, it is said, that it would be unjust, as it respects the assenting creditors, to set aside the assignment, because they must lose their debts. But it is a well known maxim, that no man may so exercise his own rights as to infringe upon the rights of another. Though a creditor has a right to obtain the payment or security of his debt, yet if he adopts such measures as will defeat the co-existing right of another creditor, the transaction is void. If a creditor receives the estate of a debtor in payment of a debt, and leaves it in his possession, the law pronounces the conveyance void, though for an honest debt, because it tends to defraud other creditors. If a creditor makes a just debt part of the consideration of, and a cover for, a fraudulent conveyance, the whole

contract will be set aside, though he loses an honest debt; for otherwise, creditors are defrauded. Indeed, if a man, in the exercise of a right, enters into a contract which, if holden valid, would defeat the equal right of another, it is reasonable that such contract should be wholly set aside, though he thereby loses a legal right; for otherwise an innocent person may be prejudiced.

But the most important objection to the assignment in question is, that on the principles by which it is supported, insolvent debtors will have the power, in effect, to pass acts of insolvency in their own favour on such conditions as they shall think proper. If the assent of one creditor, or a small number, will be sufficient to vest the estate in the trustee, and put it out of the reach of dissenting creditors by attachment or execution; then the trustee, to discharge his trust, must go through with a complete settlement of the estate : he must dispose of it, and ascertain the debts, to enable him to strike the average, and make an equal distribution among the assenting creditors. It will be necessary for dissenting creditors to wait till this process is completed, before they can call on the trustee for any surplus estate, by foreign attachment, if the debtor absconds : and it will readily be seen that there will be such a scope for expenses, and such grounds for delay, in the management of such a concern, especially where the trustee is disposed to make the most of a good job, as will afford a very unpromising prospect for dissenting creditors. If, however, the debtor should not abscond, then they cannot proceed by foreign attachment to draw the surplus estate (if any) out of the hands of the trustee, but can proceed only against the person of the debtor; and, on his imprisonment for the debt, he may take the poor debtor's oath; or if he cannot, it will not be in his power to command his property; and there will be little prospect of obtaining any thing from that quarter. The consequence is,

in case of such an assignment, the only chance that creditors will have of obtaining any part of their debts will be by assenting to it, and this is, to every substantial purpose, giving to debtors the power of compelling their creditors to submit to an act of insolvency.

If they assent, it must be on such terms, with respect to releasing their debts, as their debtors may think proper. If they prescribe it as a condition of their paying to their creditors the proportion of their estate, that such creditors shall execute a general discharge of their demands, this must be complied with, or they can have no claim on the trustees. This has been determined in the State of *Pennsylvania*, where these assignments have been held to be valid. In an action brought by the plaintiff, as endorsee and holder of several promissory notes drawn by *Dorey and Bayhir*, in favour of *Joseph Mussi*, against the defendants, to whom *Dorey* and *Bayhir* had assigned all their estate, in trust, for the payment *pro rata*, of such of their creditors as should, within a certain period, execute a general release, and the dividend of the non-assenting creditors was to be paid to them. The plaintiff had not executed the release; and it was objected, that he could not sue the trustees, even for a dividend, in his own name, without performing the condition precedent: and the court were unanimously and clearly of this opinion, and the plaintiff suffered a nonsuit. *Mather* v. *Pratt et al.*, 4 *Dall.* 224. Of course, creditors may be under the necessity of releasing all claim on the debtor to enable them to obtain their average from the trustees; and if they decline to do this, they have nothing but the hopeless remedy against the bodies of their debtors, or the surplus estate in the hands of the trustees.

But I ought to remark, that in a very recent case in *Pennsylvania*, (*Lippincott et al.* v. *Barker*, 2 *Binney*, 174.) the *supreme court* expressed doubts respecting the validity of such assignments, and chief justice *Tilghman* observed; " There are many and strong objections to

deeds of assignment made without the privity of creditors, and excluding all who do not execute releases."

Another strong objection to a debtor's having the power of making such an assignment is the difficulty of carrying it into effect. The frauds, delays, and expenses of executing a commission of bankruptcy, even where provision is made by statute for the purpose, are too well known to require any illustration: but how much greater must these be where there is no statute giving the power, and prescribing the mode, of executing the trust. Here is no tribunal to liquidate the claims of the creditors; to adjust and allow the expenses of the trustee; or to compel him to make partial dividends, as the estate may come into his hands; but every contested claim must be decided by the ordinary courts of justice; the allowance to be made to the trustee for his expense and services may be disputed in every suit brought against him by a creditor for his dividend; and no suit can be maintained till the whole concern is closed so as to ascertain the dividend. Different courts might decide differently with respect to the allowance proper to be made to the trustee, so that it would be impossible to have a uniform rule for the dividends payable to the creditors. Though instances may occur where estates may easily be settled in this way, yet it is manifest, it will more frequently happen that it will be attended with great expense, inconvenience, and delay, especially in extensive and complicated concerns. Courts of justice ought never to admit into our jurisprudence a principle that may be so prejudicial to the commonwealth.

An objection of great weight arises from the circumstance that debtors not well disposed towards their creditors may appoint trustees so deficient in integrity and responsibility that the creditors may be prevented from taking any benefit of the estate. It will readily be seen, that trustees may be appointed by debtors, in whom the creditors in general place no confidence; and yet of such

a character that the assignment cannot be set aside on that account. Of course, creditors can have no check on the appointment of improper trustees; and no remedy but to refuse their assent to the assignment; and this will give them nothing but the miserable prospect of pursuing the person of the debtor, or calling for the surplus estate on the trustees, whose want of integrity and responsibility may be the sole reason why they would not assent to the assignment. If the assignment is valid, they are obliged to take the risk of the same want of integrity, and responsibility which they wish to avoid. No principle can be correct that will place creditors in such a dilemma.

It will be admitted to be an honourable act for an insolvent debtor to provide for the equal distribution of his estate among his creditors, and if that object could be accomplished in all cases, it would deserve to be encouraged. But though there may be instances where this object can be accomplished, yet it is evident that, under colour of this honourable pretence, dishonest debtors might derive advantage to themselves, if they are vested with the power of nominating and appointing their own trustees with the assent of one or a small part of their creditors. They may appoint some of their friends on whom they wish to confer a favour, with a secret understanding that they shall deal favourably with them; and in the settlement of a large estate, there will be no difficulty in managing in such a manner as will be very advantageous to a dishonest debtor and his amiable trustee. It cannot be consistent with the rights of creditors to give debtors such a power when the temptation is so strong to abuse it.

From these considerations it would seem to be little short of demonstration, that however desirable it may be, that the estate of an insolvent debtor should be equally divided among his creditors, yet it would be much better for them to take their chance to secure their debts

by superior vigilance under the attachment law, than to give their debtors the power of assigning their estate to a trustee for their general benefit without their assent.

It must also be considered, that such a practice is opposed to the policy of our law. We have not established the principle, that no man can be imprisoned for debt, except on a bill of exchange; that estate cannot be attached when the body can be had; or that when one creditor attaches estate to secure his debt, he attaches for the whole; or that the real estate of a debtor shall be protected from his creditors. But by our law, the body and the estate both real and personal, of debtors, are responsible for their debts; and creditors are entitled to avail themselves of their superior vigilance in the attachment of property to secure their debts. To admit the assignment in question to be valid would be directly repugnant to the prominent principle in our jurisprudence. If sound policy should require such a change in our law, it would be more advisable to have it effected by the interposition of the legislature, who can make the necessary provisions to carry such a measure into complete effect.

The case of *Hempstead* v. *Starr*, 3 *Day*, 340. decided in this court, has been relied on, as deciding this assignment to be valid: but that case only decided, that a debtor, on the eve of failure, may prefer creditors, and that an assignment of his estate to a trustee to be distributed *pro rata* among certain enumerated creditors with their assent, and with a condition that the surplus should be applied to the discharge of the debts due to his creditors generally, was not fraudulent *per se* against attaching creditors not named in such assignment. But the effect of an assignment without the assent, or against the assent, of the creditors named in the deed, was not considered, or decided.

For these reasons, I am of opinion, that a new trial ought not to be granted.

June, 1810.

NAYLOR
v.
FOSDICK.

June, 1810.

NAYLOR
v.
FOSDICK.

EDMOND, BRAINERD, and J. C. SMITH, Js. were of the same opinion.

TRUMBULL, J. Whether a deed or conveyance be fraudulent and void is always a matter of law, to be determined by the judges, on facts appearing on the face of the instrument, or record, or agreed on by the parties, or found by verdict of a jury.

A deed executed with all legal forms may be void; 1st. If the parties have been guilty of intentional fraud. Such a conveyance is not *bonâ fide*, but void at common law.

2dly. A conveyance may be fraudulent and void, where there is no intentional fraud, if it be a fraud upon the law; as in the case of the bankrupt laws, &c.

3dly. It may be void on the sole ground, that though it would have been sufficient and good in all other respects, subsequent acts are omitted, which were necessary to complete the transfer of the property; as where possession does not accompany or follow the deed, and that omission is not accounted for or explained; so in case of property, or debts, in the hands of a third person, to whom the grantee does not give notice in a reasonable time, and before the intervention of a creditor by foreign attachment or levy.

Under the bankrupt laws, all conveyances made with intent to give preference to a favourite creditor, on the eve and in contemplation of the grantor's bankruptcy, are void, as a fraud upon the law. But we have no bankrupt law existing.

At common law, a man in failing and insolvent circumstances may give a preference to a favourite creditor, who has a *bonâ fide* demand, by an absolute conveyance of property to him at an agreed price and value, and so delivered and received, as to be a discharge and payment of the debt and demand, or such part of it, as amounts to the agreed value.

2

Such a debtor may also secure the payment of any June, 1810. debt, whether liquidated or not, by a mortgage of lands, or a conveyance of personal property, or debts due to him, as a pledge and security for the payment of his creditor's demand, notwithstanding that the surplus, if any be, remains the property of the grantor. Such conveyances are good, if there be no intentional collusion, or secret trust.

NAYLOR
v.
FOSDICK.

In this state, it has been holden as settled law, that no man can make a conveyance of his effects to a mere trustee, for the payment of debts due to particular creditors under his own direction, with intent to secure the property from levy and attachment; and that such conveyance is void against any creditor, entitled to contest its validity: nor can such assignment to a mere trustee, though for the benefit of all the creditors, be valid, to defeat any of them of the right of levy; as all such deeds and assignments have been adjudged void, under our statutes against fraudulent conveyances, and those giving to creditors the right of attachment and levy, I am not prepared to say that these decisions are not law.

As to the question of assent by the grantee, I hold that every deed or assignment vests the property in the grantee immediately on its execution, defeasible only by his actual dissent, and refusal to accept.

The charge to the jury, that by law the assignment in the present case, under the circumstances agreed, was void, and that they must find a verdict for the plaintiff, is clearly right, provided the case stated on the motion for a new trial warrants that legal inference.

It is the duty of this court to decide causes according to the true principles of law: though we pay the highest respect and attention to the modern decisions in the chief courts in *Great Britain* and the *United States*, we are not bound by the mere authority of foreign pre-

cedents, especially in states where their statutes vary from ours. In this court, in the case of *Hempstead* v. *Starr*, 3 *Day*, 340. it was decided only, that a pledge, delivery, and assignment of goods to a creditor, to be sold, and the avails applied to the payment of liquidated debts due to himself, and other specified debts due to other creditors named, was not a transaction in itself fraudulent, nor such assignment wholly void.

In *Tudor and Woodbridge* v. *Perkins*, 3 *Day*, 364. it was only decided, that on the assignment of a debt, notice must be given to the debtor in a reasonable time, and if not so given, the transfer will not be so completed as to prevent any creditor from securing the debt by foreign attachment at any time previous to actual notice to the debtor.

In the case on trial, previous notice was given to *Fosdick;* and *Mowatt* was agent to several of the creditors, and, as such, stood in the place of a creditor. These facts appear on the motion. The principal point in question is, therefore, new in this court, and must be decided on the principles of law.

The case is shortly this. [Here his honour made a concise statement of the facts, and recited the deed of assignment, with the schedules annexed, and then proceeded.]

This deed is good as a power of attorney to *Mowatt* to collect the debts and pay over the moneys actually received. What is then its validity and effect as an assignment?

Had it appeared, on the deed, that *Mowatt* was the agent of certain creditors, therein named, and the amount of their respective demands stated, and that particular debts, from persons also named and specified, due to *Manwaring* were assigned to *Mowatt* in trust to collect and apply, I should hold such assignment valid, as a pledge and security for the payment of the demands designated, and that after due notice to the debtors,

June, 1810.

NAYLOR
v.
FOSDICK.

those debts would not be liable to foreign attachment. But here is no specific pledge, and for no specific consideration. We are not informed of the names of the debtors who owe the 10,000 dollars, on one side, nor who are the twenty creditors of *Manwaring*, nor what is the amount of their demands, in particular, nor even in gross, on the other. Nothing is certain on the face of the deed, and there is no power or means by which the court below could have reduced any thing to certainty. If such assignment be valid, it follows, that any person may, by his own act, place all his estate in the hands of a trustee of his own choice, in trust, for the benefit of his creditors, or such part of them as he may designate; that such general assignment will put all his property, and debts due to him, out of the reach of law, and safe from any levy, or foreign attachment by a creditor; that no creditor can call any part of this fund out of the hands of the trustee, until, by suit or settlement, all the assigned debts which were collectible, are in fact collected by the trustee; the names of all the creditors, and the amount of their respective demands ascertained; and, in case the fund be insufficient, a correct average made out, for their several proportions; that the creditors must receive from the trustee alone their payment or final average; and that where the assignment is to a part of the creditors only, and after payment of their demands, a surplus should remain in the hands of the trustee, in that case only will the money in his hands be liable to foreign attachment in favour of any creditor; and that in all cases the account rendered and attested by the trustee must be conclusive, unless the other party can disprove it by the fortunate discovery of contrary evidence.

It forcibly strikes my mind, that to hold this deed of assignment valid and effectual to defeat the claim of the plaintiffs, by their foreign attachment, would open a

June, 1810.

NAYLOR
v.
FOSDICK.

door to fraud, collusion and injustice, and is contrary to the principles, and opposed to the policy, of the common law.

It is also evidently subversive of the rights given to creditors by the statutes of this state; as it would empower every debtor, who found himself in failing circumstances, to place all his property, in possession or in action, under cover in the hands of a favourite trustee, and beyond the reach of attachment on mesne process, or levy by execution; and then to procure the discharge of his person from all subsequent arrests or imprisonment for debt by taking the oath prescribed by statute for the benefit of poor prisoners.

For these reasons I am of opinion that the charge given to the jury by the superior court on the circuit was right, and that no new trial ought to be advised.

N. SMITH, J.  It is my opinion that a new trial ought to be granted.

If this assignment is void, it must be, either,

1st. For want of assent of parties; or,

2dly. For want of consideration; or,

3dly. Because it is fraudulent, and opposed to sound policy.

1. There is no room for even a doubt as to the first of these objections.  The assignor and nominal assignee expressly assent; and those for whose benefit it was made are presumed in law to assent until their dissent appears; and the dissent of any one creditor will do no more than destroy his interest in the trust, so that his share will, in such case, result to the assignor, liable, like his other *choses in action*, to be taken by his creditors under our law of foreign attachment.  This objection gains no additional force in coming from a creditor; since the assent of parties is necessary for the completion of every contract as between the parties themselves; and the argument would stand precisely on the ground it does now,

if the assignor was himself claiming the property, by an action of trover, against the assignee, in opposition to his solemn deed of assignment, and the express acceptance and undertaking of the assignee. But this, I presume, would not be contended for by counsel, unless they could draw in aid of the argument want of consideration also.

2. Was here, then, a sufficient consideration to support the transfer? It was an absolute, unconditional delivery of the property in payment of antecedent debts; and a mode was pointed out of making the application. It is not a question, I trust, whether the payment of an antecedent debt is a sufficient consideration to support a transfer.

It has been insisted, that whatever may be the case of a transfer to the creditors themselves, or to a part of the creditors in trust for themselves and others; yet that a transfer to a stranger in trust for the payment of debts, must be void. This presents a question which needs no discussion; since it appears that the assignee was agent to several of the creditors named in the deed of assignment; and the transfer being made to him for their benefit, is the same thing in contemplation of law, as though made to them directly.

The case is shortly this. Several creditors apply to their debtor, who is in failing circumstances, by their agent, for payment of their debts; and the debtor agrees to assign certain credits to him, provided they can be collected, and part of the avails paid over to certain other creditors. To this the agent for the creditors agrees, and the whole are received in payment of antecedent debts, though the precise application cannot be made until the moneys are collected. Such being the obvious nature of the contract in question, I ask where is the legal objection to it? Sure I am that none exists, unless it can be found in the consideration, that,

3. The assignment is fraudulent, and opposed to prin-

ciples of sound policy. And here the first thing that occurs is the finding of the court, that the assignment was made *bonâ fide.* There has not been even a pretence that a secret trust was created for the future benefit of the assignor. We are, then, to consider this transaction as being, what it speaks on the face of it, a mere preference given to certain creditors, and that with the fairest views.

In *England;* to prefer one creditor to others has never been considered fraudulent under the statutes of *Elizabeth ;* though such transfer would be void under the bankrupt laws, if the grantor were a trader within those laws.

In this state, we have no bankrupt laws, to which such preference is opposed; and it seems to pursue the very spirit of our law of attachment, by allowing the vigilant creditor to obtain that preference by consent of the debtor, which he might obtain by process of law.

What would be the effect of a conveyance of all a man's property for the benefit of all his creditors, with a view to defeat the operation of our law of attachment, it is unnecessary to determine ; because it does not appear from the statement of facts in the motion, that this was a transfer of all the assignor's property, nor does it appear to be for the benefit of all his creditors. But so far from this, the contrary is clearly inferible from the face of the assignment. It is a mere transfer of a specified number of debts, the debtors living in different states from the one where the assignor lived, for the benefit of particular creditors, named in the deed of assignment, leaving his *choses in action* against people in the state in which he lived, and all his other property to the operation of law The finding of the court precludes all idea of an intent to defeat any law.

But I consider all the questions which can arise in the present case to have been fully settled by this court in the case of *Hempstead* v. *Starr,* 3 *Day,* 340. In that

case the assignment was adjudged valid upon great deliberation; and I am unable to discover scarcely any difference in point of fact, and none in point of principle, between that case and this.

BALDWIN, J. was of the same opinion.

REEVE, J. [After stating the principal facts in the case.] It was agreed, that the assignment was *bonâ fide.* By this I understand that the intention of the assignor was to pay his creditors, and not to defraud them by reserving to himself any benefit from his property so assigned. I am not able to perceive in this transaction any thing done which should render it void, that would not render void every preference of one creditor to another, when the assignee was in failing circumstances.

No principle of the common law is more firmly established than this, that a debtor may prefer one creditor to another. If his property is all in money, he may pay it all to *A.* and have nothing left for *B.*, *C.* and *D.*, his other creditors. If his property consists of certain articles, he may deliver them all to *A.* in payment of his debt, and have nothing left for *B.*, *C.* and *D.* If his property consists of credits, these he may also deliver to *A.* by the only mode in which they can be delivered, *viz.* by an assignment. These are propositions, which, I suppose, will not be controverted.

In what does the present transaction differ from the cases supposed? In this, that it was an assignment not to the creditors, but to a trustee for their benefit. This objection cannot proceed upon the ground that the legal title may not be vested in one person as trustee, whilst the equitable title vests in the *cestuy que trust;* for this point has been determined in countless instances in chancery. Is it then contended, that a debtor cannot prefer his creditors other than by a specific assignment to

them, and not to a trustee for their benefit? That he may assign to a trustee is a point than which there is none more luminous from authority. The case of *Estwick* v. *Caillaud*, 5 *Term Rep.* 420. was an assignment to a trustee of his property for certain purposes, and among others for the payment of certain creditors named in a schedule, and the assignment was held valid. The case of *Nunn and others* v. *Wilsmore*, 8 *Term Rep.* 521. was an assignment of his estate to trustees to pay his debts, and the assignment was held valid. *Ingliss and others* v. *Grant*, 5 *Term Rep.* 530. was an assignment of all his effects, in trust, for creditors in certain proportions. The assignment was held valid. The case of *Wilkes and Fo taine* v. *Ferris*, 5 *Johns. Rep.* 335. was a case of this description; and the objection was, that it ought to have been an assignment to the creditors themselves: but the court adjudged the objection to be groundless. To the same purpose is *Wilt* v. *Franklin*, 1 *Binn.* 502. and the same point was determined in the case of *Hempstead* v. *Starr*, 3 *Day*, 340. for this was an assignment to a trustee to pay creditors, and it was held valid.

Will it be contended, that there must be the assent of the creditors, and that is not found in this case? It is true, assent is not found; but it is found they did not dissent. It is not necessary that there should be any assent to create a title in a grantee. In a contract executed, the property may be devested by dissent, but it remains vested until that dissent is manifested. A conveyance of land to an infant of a day old, who is incapable of assent, as effectually conveys a title to the infant as if he had assented. This is analogous to all cases of descent and devise. The estate vests in the heir or devisee, liable to be devested by their dissent. When a *feme covert* purchases real property, she is incapable of assenting; yet such property is vested in her, and remains so vested, until her husband dissents, or she herself, when she becomes *discovert*. If property is bailed to *B.* for *C.*, although *C.*

knows nothing of the bailment, yet the property vests in *C.*

It is objected to such a transaction, that it will delay creditors in collecting their debts. This proves too much : for, surely, if there had been a specific assignment to certain creditors, it would not only delay those creditors to whom nothing was assigned, but wholly defeat them. And yet it must be admitted, that a debtor may so prefer one creditor to another. In the case of *Meux et al.* v. *Howell et al.,* 4 *East,* 1. we find Lord *Ellenborough* declaring, that it is not every feoffment, judgment, &c. which has the effect of delaying creditors of their debts, that is fraudulent, and as evidence of it puts the case of an assignment by a debtor to his creditors ; and we find in that case the opinion of Justice *Lawrence,* that a person indebted to several may confess a judgment to a trustee, to enable him to take all his property for the benefit of all his creditors equally; and there was no necessity of a previous consent of the *cestuy que trusts.* Surely, this is a case in which creditors may be delayed ; but this is a necessary consequence of that undeniable maxim, that a debtor may prefer one creditor to another, or dispose of his property among his creditors as he pleases. It is laid down in *Newland,* that a debtor may assign a part, or the whole of his property, to a particular creditor, although his other creditors may thereby be hindered or delayed in payment of their debts. The rule, as laid down in all the cases, is, where the disposition is for the purpose of paying honest debts, the motive is legal, and the disposition can never be impeached.

But it is said, that in all such cases there is a resulting trust for the grantor, provided all the debts are paid. It is admitted. But here can be no fraud; for the creditors are satisfied, and the trust is not for the debtor at the expense of any person. But it is said, that although the debtor is insolvent, yet so many of the

*cestuy que trusts* will refuse to be such, that there will be, in case of insolvency, a resulting trust for the debtor; and thus it is fraudulent. To this I answer: an assignment, to be fraudulent, must be so at the time of the assignment, that is, it must have been made with a fraudulent motive, or it must have been voluntary, which, in point of law, is deemed fraudulent. That is not the case where the *cestuy que trusts* refuse, and there arises a resulting trust for the debtor. Shall the refusal of one *cestuy que trust* defeat the assignment? This, Lord *Kenyon* says, can never be admitted. No: the legal effect of the assignment is to vest the legal title in the trustee to pay debts; and when this is accomplished, he is trustee for the debtor. And this is no fraud. If the assignment had been made for the sake of a resulting trust to himself, at the expense of his creditors, it would be fraudulent: but not when this is not the case. This doctrine is expressly avowed in *Wilkes et al.* v. *Ferris*, 5 *Johns. Rep.* 335.

That such a practice ought not to be tolerated, may be urged, because in such case the creditor has no legal remedy against this equitable right of the debtor, when the legal title is in the trustee. I apprehend this is no solid objection. The creditor can avail himself of a remedy against this equitable claim of the debtor in a court of chancery; it was so determined in *Estwick* v. *Caillaud*, 5 *Term Rep.* 425. Why should a creditor who has not been preferred, or who would not be, by refusing the provision, have it in his power to defeat the debtor of his legal right to prefer whom he will, or the creditors who were willing to avail themselves of the preference given, merely because he is defeated of a legal remedy against the resulting trust to the debtor, when he has a complete remedy in chancery? That he cannot is clearly the opinion of Lord *Kenyon*, in *Estwick* v. *Caillaud*, 5 *Term Rep.* 424. If this state of things defeats the conveyance by the debtor, it introduces a new ground on

which to declare a conveyance void; for fraudulent it cannot be, unless it is fraudulent to prefer one creditor to another in all cases: this is not contended; or unless a conveyance becomes fraudulent *ex post facto*, which was not so when made. *Nunn* v. *Wilsmore*, 8 *Term Rep.* 528—530. No principle of law is clearer than that this cannot be; and in this case, there was no design to defraud any creditor, unless preferring certain creditors was a fraud upon others; for the whole property was conveyed to creditors without the least understanding that there was any trust for the debtor; and the only reason why there is one, is, that the one of the creditors refuses to take benefit of the conveyance, and thus there arises a resulting trust subsequent to the first conveyance. It is not then fraudulent. It certainly is no novel thing that a debtor should convey away his property so as to have nothing in himself but an equitable claim, which could not, by any principles of the common law, be reached by process in a court of law. Of this the case of a mortgage is an example. The mortgagor's equity may be of great value; but it never was supposed, that because a debtor had turned his legal property into an equitable right, this was a fraud upon creditors; for they could always avail themselves of this equitable property in a court of chancery.

I apprehend that all the supposed evils of the practice contended against, grow out of the rule that a debtor may prefer one creditor to another, and that these evils must continue, until that acknowledged right of the debtor is abolished.

It is said, that this practice puts it into the power of the insolvent debtor to be the executor of his own estate; and when a creditor is on the eve of attaching his debt, and securing his property, he finds that it is all conveyed to a trustee, and out of his reach. Suppose the debtor had not conveyed to a trustee; but conveyed it

specifically to *A.*, *B.* and *C.*, creditors ; would not the creditor who was about to attach be as much disappointed ? He would not only be disappointed and delayed, but would be altogether defeated. Can there be any solidity in the argument, which admits that the debtor may, at his pleasure, uncontrolled, dispose of his property among his creditors, and which complains that the assigning his estate to trustees for their benefit puts it into his power to exercise an uncontrolled authority over his estate in the distribution of it amongst his creditors ? If his property consists in *choses*, notes, book debts, &c. may he not assign them to *A.*, *B.* and *C.*, his creditors, and leave nothing for *D.*, and is not this assignment valid in law and equity ? And suppose he assigns these *choses* to trustees for their benefit, who is to complain, if *A.*, *B.* and *C.* do not ?

It is said, that it is a dangerous doctrine, on the ground of a probable collusion betwixt the trustee, creditor and debtor, that the debtor shall be dealt with favourably. But is this probability increased by the intervention of a trustee ? Is not the danger the same where the insolvent debtor selects his favourite creditors, that such may be the bargain ? If such should be the bargain, it would render the transaction void in both cases; but the danger is at least as great in the case where it is admitted it may be done, as in the other: nay, it is greater ; for whatever property comes into the hands of the trustee, he must account for it to the creditors. But I contend, that we never can adopt the idea that such an assignment to trustees is fraudulent, without introducing a practice totally novel, opposed to all the authority of the books. The cases, which I have already cited, demonstrate it to be the law of *Westminster Hall*, and opposed to this there is not a *scintilla juris* there to be found. It is opposed to the decisions of the neighbouring states. We have the unanimous opinion of the supreme courts of *New-York* and *Pennsylvania* on this point. We have our own decision in the case of *Hempstead* v. *Starr*, as

to this point. It was an assignment to trustees for the benefit of creditors, which is with me conclusive.

If I could ever render an opinion that such an assignment was fraudulent, I would first freely acknowledge that our decision in *Hempstead* v. *Starr* was unfounded; and I would further declare, that the maxim, that an insolvent debtor might prefer one creditor to another, should be scouted from our system, and rest for ever satisfied that the law is truly stated in *Root's Cases*, that such a debtor could not prefer one creditor to another without committing a fraud on our attachment law, which no man now contends is law.

In *Ingliss et al.* v. *Grant*, 5 *Term Rep.* 530. where in *India* a man assigned his property to trustees to pay his debts in certain proportions, came to *England*, committed an act of bankruptcy, and his assignees claimed that the conveyance in *India* was void, the court held it good. The court say, that as the bankrupt laws do not extend to *India*, a debtor might dispose of his property amongst his creditors as he pleased; and they validate this mode of doing it by assigning to trustees, and observe, that such a transaction is usually fair at the time. Lord *Kenyon* there said, that those points were too clear for discussion; and yet this is the very case before the court. In the case of *Meux et al.* v. *Howell et al.*, 4 *East*, 1. all the principles which I contend for were recognised. In this case, the debtor confessed judgment to a creditor for a large nominal sum with a defeasance, that such execution should issue as would cover the debt of the conusee and all his other creditors, among whom a valuable distribution was to be made. This was an action for the penalty inflicted by the 13th *Elizabeth*, for covinously recovering a judgment against the debtor, and with intent to delay, hinder and defraud the plaintiff of his just debt; and it was urged in the argument that this course delayed cre-

ditors, and this, by the terms of the statute, made the recovery fraudulent, and of course the penalty was incurred. The court unanimously resist the claim, and that upon the ground that it was a fair transaction, although creditors might be delayed and hindered, for this was always the case when a debtor, in failing circumstances, preferred one creditor; for by this he diminished the fund from which his other creditors were to be satisfied. They seem to view it as absurd, that a debtor should be considered as acting fraudulently, who was attempting to do that equally among his creditors by his own act, which it was the object of the bankrupt laws to effect. The principle there recognised is, that every transaction of this kind is valid where it is done with a view to satisfy debts due, with no view to any trust for the debtor.

It has been objected, that a debtor cannot elect a trustee, without consulting his creditors. It is most apparent that this was not done in the cases before named where the assignment was held valid. The argument would have force if it were in the power of the debtor to impose a trustee upon creditors against their will; but they may dissent whenever they choose so to do, and no injury is done, only that those who do accept will be preferred. And this is what every creditor has a right to do. If *A.* a debtor has a right to prefer *B.* to his other creditor *C.*, but does not do it, but assigns to a trustee for the benefit of both, and *C.* refuses; that *C.* should now have a right to prefer himself to *B.* who is satisfied with the arrangement that *A.* has made, is as absurd as it is manifestly unjust.

Of the same nature is the objection, that the debtor creates a system of bankrupt laws for himself. He can force no system on any person; and no one but the person who is willing is bound by what he does. And the debtor, in whatever mode he prefers one creditor to another, as much makes out his own system of

bankruptcy as in this case. But the case of *Hempstead* v. *Starr*, decided in this court, furnishes a decisive answer to this objection ; for in that case there was a trustee created by the election of the debtor, without consulting the creditors. And this court held that that transaction was not fraudulent. I think it cannot be successfully contended but that the law of the books recognises such a transaction to be valid. The point has been decided in the same manner in *Pennsylvania* and *New-York*, by the supreme courts of those states. We ought, then, to have very cogent reasons for departing from a well known and established system. I also understand the same point to have been decided by this court in the case of *Hempstead* v. *Starr ;* and to ascertain whether this is so, it will be useful to advert to that case.

1. In both cases there was an assignment of property to real creditors, or for their benefit, and to no other person.

2. The assignment in both cases was to a trustee for the benefit of others.

3. In neither case was there any reservation of a residue which might belong to the assignor. The whole property assigned was intended to go to the creditors.

4. Both cases were liable to the objection, that if any of the creditors should refuse to accept, there would necessarily be a *residuum*, the beneficial interest of which would belong to the assignor.

5. In both cases the assignor were in insolvent circumstances.

6. In both cases the property assigned was delivered.

7. In both cases the objection that the debtors create their own system of bankruptcy equally exists.

8. In both cases the creditors would be impeded in the recovery of their debts.

9. In both there is a preference given to particular creditors.

I perceive no material point in which the two cases differ. In the case of *Hempstead* v. *Starr*, the debtor gave a preference to a particular creditor in the first place, and, when he was paid, to other particular creditors, and the residue to all his creditors generally. The construction must be, to be divided equally betwixt them, *pari passu*. In the present case, there is no preference given to those for whose benefit the assignment is made; but the *cestuy que trusts* share equally. This is a point of difference that needs no argument to show it to be immaterial. Perhaps it may be thought that by the assignment in *Hempstead* v. *Starr*, all possibility of a *residuum* to the debtor, arising from the refusal of a creditor to accept, is cut off, by dividing the *residuum* mentioned in the bill of sale among his creditors generally, and that here is a difference. If this difference did exist, it clearly would not render fraudulent the assignment, as appears from the authorities already cited. But the fact is, there is no such difference. For the assignment in *Hempstead* v. *Starr* is, that the residue, after paying certain creditors, shall be for the benefit of creditors generally. But if some one of those creditors for whose benefit the assignment was made should refuse to accept, there is no provision made for a *residuum* arising from that quarter; so that, in this respect, there is no difference. There is a difference in this, that the assignment was of specific articles in *Hempstead* v. *Starr*, and in this case of *choses ;* but this makes no difference. The assignment of *choses* is the well known law of chancery; as much so, as the assignment of specific property ; and such assignments have been always recognised as valid in this state; and in the case before mentioned this point was determined as I now contend for.

The delivery of the one is by manual tradition ; of the other by the delivery of the security evidencing the debt; and if it is a book debt, there can be no delivery but of the assignment, and notice given to the debtor.

I find, therefore, no difference in the cases. In the case of *Hempstead* v. *Starr*, because the court charged the jury, that the transaction was a fraud and void, this court granted a new trial, and, as I apprehend, on sound principles. I am, therefore, of opinion, that in this case also, where there has been a similar charge, a new trial ought to be granted.

MITCHELL, Ch. J. was of opinion that a new trial ought to be granted, on the ground that this case could not be distinguished in principle from that of *Hempstead* v. *Starr*.

New trial not to be granted.