# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | ) |
| | ) No. 70564-4-I |
| Respondent, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) UNPUBLISHED OPINION |
| BENJAMIN CHAD STUM, | ) |
| | ) |
| Appellant. | ) FILED: August 4, 2014 |
| | ) |

TRICKEY, J. — Police questioning during a routine investigatory detention does not rise to the level of custodial interrogation. Because Benjamin Stum's statements to police occurred during a valid Terry stop, no Miranda warnings were required, and the trial court properly denied his motion to suppress. Nor has Stum demonstrated any prejudice resulting from the delayed entry of findings of fact and conclusions of law following the CrR 3.5 hearing. We therefore affirm his convictions for second degree burglary and first degree reckless burning.

## FACTS

The relevant facts are essentially undisputed. On April 3, 2013, Everett Police Detective Michael Atwood responded to a reported explosion at an unoccupied residence on 41st Street.[1] The explosion blew out the windows, sent

---

[1] Report of Proceedings (RP) (CrR 3.5 Hearing, June 14, 2013) at 7; 1 RP (June 17 & 18, 2013) at 90-91.

the front door across the street, damaged the walls, and caused a fire in the basement.[2]

Upon arriving, Atwood, an arson investigator and bomb technician, noticed extensive damage to the house from some type of explosion.[3] After inspecting the house, Atwood interviewed several neighbors, who described a man they saw leaving the house at about the time of the explosion.[4] Atwood drove around the neighborhood, but could not find the man. He then returned to the house and resumed his investigation.[5]

While Atwood spoke with one of the neighbors, he noticed a man approaching on foot.[6] The man, later identified as Benjamin Stum, was carrying a sheathed hunting knife in one hand and an open beer can in the other.[7] Atwood walked over to Stum, who matched the description of the man that neighbors saw leaving the house around the time of the explosion.[8] Stum's beer can was identical to several empty cans that Atwood had seen inside the damaged house.[9]

---

[2] The city of Everett eventually demolished the house. 1 RP at 93-116.
[3] RP at 7.
[4] RP at 8.
[5] RP at 8.
[6] RP at 8-9.
[7] RP at 9.
[8] RP at 9.
[9] RP at 13.

Atwood, who was not in uniform, identified himself and asked Stum to put down the beer can and hand over the knife.[10] Stum complied, and Atwood placed the knife on the front seat of his nearby police van.[11] Atwood told Stum that he was investigating a suspicious fire in the house.[12] He checked Stum's identification card briefly and then returned the card.[13]

Atwood informed Stum that it was illegal to carry an open beer can in public and that his beer can matched several empty cans in the house.[14] At some point during the conversation, Atwood told Stum that it was "time to be honest."[15] Stum eventually became emotional and indicated that he had been sleeping in the house for some time and that the explosion was an accident.[16]

Because of the amount of damage in the house, Atwood was skeptical about Stum's assertion and asked him to clarify it.[17] When Stum confirmed that he was in the house at the time of the explosion, Atwood stopped the conversation and advised Stum of his Miranda rights.[18] See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The conversation had lasted about five minutes.[19]

---

[10] RP at 9.
[11] RP at 9.
[12] RP at 14.
[13] RP at 14.
[14] RP at 13.
[15] RP at 16.
[16] RP at 17-18.
[17] RP at 18.
[18] RP at 19.
[19] RP at 16.

Stum indicated that he understood his rights and continued to talk with Atwood.[20] He also provided a written statement.[21] Stum explained that he had been living in the vacant house for several months.[22] On the day of the explosion, Stum was cutting and removing copper pipe downstairs in the house to sell. At some point, he began to smell gas.[23] Stum indicated that he had caused the explosion when he used a lighter to test the quantity of gas or when he took a break and lit a cigarette.[24]

The State charged Stum with one count of second degree burglary and one count of first degree reckless burning.[25] Prior to trial, the defendant moved to suppress his statements to Detective Atwood, arguing that they were made during custodial interrogation without the benefit of Miranda warnings.[26] Following a CrR 3.5 hearing, the trial court denied the motion, concluding that because the encounter was brief, non-coercive, and involved a valid investigatory detention, Stum was not in custody for purposes of Miranda.[27]

---

[20] RP at 10-11.
[21] RP at 11.
[22] 1 RP at 123.
[23] 1 RP at 122.
[24] 1 RP at 122-23.
[25] Clerk's Papers (CP) at 81.
[26] RP at 26-29.
[27] RP at 30-31.

No. 70564-4-I / 5

The jury found Stum guilty as charged,[28] and the court sentenced him under a first-time offender waiver to 90 days of incarceration and one year of community custody.[29]

ANALYSIS

Stum contends that the trial court erred in concluding that he was not in custody during Detective Atwood's initial questioning and that his statements were therefore admissible without the benefit of Miranda warnings. He argues that the circumstances of the encounter, including Atwood's explanation of the illegality of the open beer container, the confiscation of his knife, and the detective's suggestions that he might be involved in the explosion, exceeded the scope of a valid investigatory detention and were sufficiently coercive to constitute custodial interrogation for Miranda.

We review the trial court's decision following a CrR 3.5 hearing to determine whether substantial evidence supports the findings of fact and whether those findings, in turn, support the conclusions of law. State v. Broadaway, 133 Wn.2d 118, 130-31, 942 P.2d 363 (1997). Unchallenged findings of fact are verities on appeal. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). The trial court's determination as to whether questioning constituted custodial interrogation is a conclusion of law that we review de novo. State v. Lorenz, 152 Wn.2d 22, 36, 93 P.3d 133 (2004).

[28] CP at 34-35.
[29] CP at 18-27.

5

No. 70564-4-I / 6

Miranda warnings are required prior to the initiation of "custodial interrogation." State v. Heritage, 152 Wn.2d 210, 217, 95 P.3d 345 (2004). The test for determining whether a defendant is in custody for purposes of Miranda is an objective one: "whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest." Lorenz, 152 Wn.2d at 37 (citing Berkemer v. McCarty, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)).

Consistent with the Fourth Amendment and article I, section 7 of the Washington Constitution, a police officer may conduct a brief investigatory detention if the officer has a reasonable and articulable suspicion that an individual is involved in criminal activity. State v. Sieler, 95 Wn.2d 43, 46, 621 P.2d 1272 (1980); see also Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). During the course of a Terry stop, the officer may ask a moderate number of questions "to confirm or dispel the officer's suspicions." Heritage, 152 Wn.2d at 218. Because Terry stops generally are brief and occur in public, "they are substantially less police dominated than the police interrogations contemplated by Miranda." Heritage, 152 Wn.2d at 218 (internal quotation marks omitted) (quoting Berkemer, 468 U.S. at 439). Consequently, a routine investigatory detention is not custodial for purposes of Miranda. Heritage, 152 Wn.2d at 218.

Here, when Detective Atwood approached Stum, he knew that Stum matched the description of a man seen leaving the house at the time of the

6

No. 70564-4-I / 7

explosion and that Stum was carrying a beer can identical to those that he had seen inside the house. Under the circumstances, Atwood had specific and articulable facts justifying a brief investigatory detention to determine whether Stum might have been involved with the explosion.

Atwood did not tell Stum he could not leave, place him in handcuffs, or otherwise restrain him or restrict his movements. The questioning occurred in public and involved only Atwood and Stum. Although Atwood removed Stum's hunting knife before talking to him, an officer may temporarily secure a suspect's weapon without exceeding the permissible scope of an investigatory detention. See State v. Day, 161 Wn.2d 889, 895, 168 P.3d 1265 (2007). Finally, the questioning was brief, lasting no longer than five minutes. Once Stum clarified that he was in the house at the time of the explosion, Atwood stopped the questioning and advised Stum of his Miranda rights. Contrary to Stum's assertions, the questioning did not exceed the valid scope of a Terry stop. Under the circumstances, a reasonable person would not have believed that his freedom was curtailed to a degree analogous to a formal arrest. The trial court correctly concluded that the encounter did not constitute a custodial interrogation requiring Miranda warnings

Stum's arguments rest primarily on the claim that a reasonable person in his position would not have felt free to leave. But when a police officer questions a suspect during a valid investigatory detention, the fact that the suspect is not necessarily free to leave does not elevate the encounter into a custodial

7

interrogation. See Berkemer, 468 U.S. at 439-40 (Fourth Amendment seizure of suspect for routine Terry stop or comparable traffic stop does not rise to the level of "custody" for purposes of Miranda); Heritage, 152 Wn.2d at 218; State v. Walton, 67 Wn. App. 127, 130, 834 P.2d 624 (1992).

In his opening brief, Stum assigned error to the trial court's failure to enter written findings of fact and conclusions of law following its denial of his motion to suppress.[30] See CrR 3.5. The trial court promptly entered findings and conclusions after the State learned of the error.

We will not reverse a conviction for the late entry of findings and conclusions unless the delay prejudiced the defendant or the findings and conclusions were tailored to address the issues raised in the defendant's appellate brief. State v. Cannon, 130 Wn.2d 313, 329-30, 922 P.2d 1293 (1996).

In his reply brief, Stum has assigned error to two minor findings related to the open beer container that he was carrying. Those findings are immaterial to our analysis of the custody issue. The relevant written findings and conclusions accurately reflect the evidence presented to the trial court, the parties' arguments, and the trial court's oral decision. Stum has not alleged or demonstrated that the written findings and conclusions are inadequate to permit appellate review or that the delayed entry was in any way prejudicial. Reversal is therefore not warranted. See State v. Brockob, 159 Wn.2d 311, 344, 150 P.3d 59 (2006); Cannon, 130 Wn.2d at 330.

---

[30] Br. of Appellant at 1, 17.

Affirmed.

Trickey, J

WE CONCUR:

Spearman, C.J.

Appelwick, J