# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70713-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CLYDE JOHNSON, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: December 22, 2014 |
| | ) | |

Cox, J. — "Whether the Fourth Amendment or article I, section 7 of the Washington Constitution is in issue, a detaining officer must have 'a reasonable, articulable suspicion, based on specific objective facts, that the person seized has committed or is about to commit a crime.'"[1] Courts analyze whether an officer had a reasonable suspicion for a Terry stop under a totality of the circumstances test.[2] It is the State's burden to establish the validity of a Terry stop.[3] Because the State fails in its burden to establish, under the totality of the circumstances of this case, that a reasonable, articulable suspicion existed to support the Terry stop of Clyde Johnson, we reverse.

---

[1] State v. Day, 161 Wn.2d 889, 896, 168 P.3d 1265 (2007) (emphasis omitted) (quoting State v. Duncan, 146 Wn.2d 166, 172, 43 P.3d 513 (2002) (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968))).

[2] State v. Cardenas-Muratalla, 179 Wn. App. 307, 309, 319 P.3d 811 (2014).

[3] Id.

The undisputed facts in the trial court's CrR 3.6 Findings of Fact and Conclusions of Law, which are substantially unchallenged on appeal, state the material facts. While on patrol in April 2013, a Seattle police detective received a call from an FBI agent. The agent relayed to the detective that a paid confidential informant working for the FBI had called to report an incident that had occurred at 18th Avenue and East Yesler Way in Seattle. The informant reported that he or she had witnessed someone believed to be Johnson "embroiled in a 'heated but not physical' argument with a female." The informant stated further "that during that argument Johnson had 'flashed' a gun at the female." The informant also provided a detailed description of Johnson and the clothing he was wearing.

The police detective had seen photos of Johnson before and knew he was a convicted felon, prohibited from possessing firearms. The police detective and his partner "immediately drove to the location of 18th and Yesler to investigate a potential violent felony crime and insure there was no ongoing threat to public safety."

On arriving at the intersection, the detectives saw a man matching the description the informant gave in front of a convenience store. They observed that both the man and his clothing matched the physical description that the informant had given. The detectives observed no one else in the area. The detective who had previously seen photos of Johnson was "95% certain" that the man was Johnson.

2

After making eye contact with one of the detectives, Johnson "looked surprised, then turned and began briskly walking in the opposite direction from the [detectives]."

The detectives pulled up to the place where Johnson had been standing and both exited the patrol car. They identified themselves and ordered Johnson to stop and return to their location. Johnson complied. The detectives then took control of Johnson's arms and placed his hands on the hood of their patrol car.

Thereafter, they frisked him for weapons. They found "a 40 caliber Berretta." The detectives then arrested him.

The State charged Johnson with unlawful possession of a firearm. Johnson moved to suppress evidence of the gun, arguing that police lacked a legitimate basis to conduct a Terry stop. The court denied the motion.

The parties agreed to a stipulated facts bench trial. The trial court found Johnson guilty as charged.

Johnson appeals.

## MOTION TO SUPPRESS

Johnson argues that the trial court erroneously denied his motion to suppress evidence. Specifically, he contends that the detectives lacked reasonable, articulable suspicion to believe that a crime had been committed or was about to be committed. We agree.

Article I, section 7 of the Washington State Constitution and the Fourth Amendment of the United States Constitution limit warrantless searches and

seizures.[4] Courts generally presume that warrantless searches and seizures violate both constitutions.[5] But the State may rebut this presumption by showing that a search falls within one of the "'narrowly and jealously drawn exceptions to the warrant requirement.'"[6]

Brief investigatory stops are one exception to the warrant requirement. Also known as Terry stops, under either the Fourth Amendment or article I, section 7, officers may make a brief investigatory stop without a warrant.[7]

For a constitutional Terry stop, officers must have reasonable suspicion.[8] This suspicion must be articulable and "'based on specific objective facts, [indicating] that the person seized has committed or is about to commit a crime.'"[9]

Under both the Fourth Amendment and article 1, section 7, courts analyze whether officers had reasonable suspicion using a totality of the circumstances test.[10] Under the Fourth Amendment, the test is objective.[11] While under article

---

[4] Day, 161 Wn.2d at 893.

[5] Id.

[6] Id. at 894 (quoting State v. Stroud, 106 Wn.2d 144, 147, 720 P.2d 436 (1986)).

[7] Id. at 896.

[8] Id. at 895-96.

[9] Id. at 896 (emphasis omitted) (quoting Duncan, 146 Wn.2d at 172-74).

[10] United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002); Day, 161 Wn.2d at 896.

[11] Terry, 392 U.S. at 21-22.

1, section 7, the totality of the circumstances includes the officer's subjective beliefs.[12]

Relevant factors for the totality of the circumstances test can include "the officer's training and experience, the location of the stop, the conduct of the suspect . . . 'the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained.'"[13] The totality of the circumstances also includes "the seriousness of the offense and any threat to public safety."[14]

Fleeing from police officers is another factor to consider in determining reasonable suspicion.[15] But in State v. Gatewood, the supreme court held that the fact that a suspect looked surprised when he saw police officers, appeared to try to hide something, and walked away, did not provide reasonable suspicion.[16]

The mere presence of a weapon does not, by itself, justify a Terry stop.[17] But a report of threatened use of a weapon can provide reasonable suspicion.[18]

---

[12] Day, 161 Wn.2d at 896.

[13] State v. Acrey, 148 Wn.2d 738, 747, 64 P.3d 594 (2003) (quoting State v. Williams, 102 Wn.2d 733, 740, 689 P.2d 1065 (1984)).

[14] Cardenas-Muratalla, 179 Wn. App. at 313.

[15] State v. Gatewood, 163 Wn.2d 534, 540, 182 P.3d 426 (2008).

[16] Id. at 537-38, 40.

[17] Cardenas-Muratalla, 179 Wn. App. at 313.

[18] Id.

Additionally, an officer may have reasonable suspicion based on information received from another person.[19] A tip provides reasonable suspicion if, under the totality of the circumstances, it has sufficient "indicia of reliability."[20] Sufficient indicia of reliability can be shown with evidence suggesting that the informant is reliable or with police corroboration.[21]

For example, when an informant accurately predicts a suspect's future behavior, it suggests the informant had reliable information.[22] Eyewitness knowledge is also more reliable.[23]

In order to corroborate a tip, officers must corroborate an informant's knowledge of criminal activity.[24] Corroborating a "description of a subject's readily observable location and appearance" does not by itself provide sufficient indicia of reliability.[25]

Courts consider information received from concerned citizens more reliable than information received from paid informants.[26] Thus, when a paid

---

[19] Navarette v. California, ___ U.S.___, 134 S. Ct. 1683, 1688, 188 L. Ed. 2d 680 (2014).

[20] State v. Marcum, 149 Wn. App. 894, 904, 205 P.3d 969 (2009).

[21] Id.

[22] Alabama v. White, 496 U.S. 325, 332, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990).

[23] Navarette, 134 S. Ct. at 1689.

[24] Florida v. J.L., 529 U.S. 266, 272, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000).

[25] Id.

[26] State v. Kennedy, 107 Wn.2d 1, 8, 726 P.2d 445 (1986).

informant provides information, the information requires a higher showing of reliability.[27]

To determine reliability, "[C]ourts will generally consider several factors, primarily (1) whether the informant is reliable, (2) whether the information was obtained in a reliable fashion, and (3) whether the officers can corroborate any details of the informant's tip."[28]

Evidence seized in an invalid Terry stop must be suppressed.[29]

Trial courts make written findings of fact and conclusions of law after an evidentiary hearing on a motion to suppress evidence.[30] Appellate courts review challenged findings of fact for substantial evidence, and determine whether the findings support the conclusions of law.[31] "Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.'"[32] Conclusions of law are reviewed de novo.[33]

Here, we begin our examination of the totality of the circumstances by considering the indicia of reliability relating to the information provided to police by the paid FBI informant. The court's undisputed factual findings provide in

---

[27] Id.

[28] State v. Saggers, ___ Wn. App. ___, 332 P.3d 1034, 1038 (2014).

[29] Day, 161 Wn.2d at 894-95.

[30] CrR 3.6.

[31] State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

[32] Id. (quoting State v. Reid, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)).

[33] State v. Ortega, 177 Wn.2d 116, 122, 297 P.3d 57 (2013).

relevant part:

> No information was provided by police regarding the identity of the paid informant who furnished the information to law enforcement, nor the informant's track record as a paid informant or the informant's reliability. The informant's identity was not disclosed for two reasons: 1) safety concerns on behalf of the informant and 2) to allow for the continued use of this particular informant, which requires that anonymity be preserved.[34]

We do not take issue with law enforcement's decision not to disclose the paid informant's identity to the court. That is a decision for law enforcement to make. But that decision has consequences.

Our constitutional inquiry is whether sufficient indicia of reliability justify the Terry stop in this case. It is undisputed that the police provided to the court no information about the informant's reliability. It is also undisputed that the police provided no information about the informant's track record as a paid informant. Without either or both of these pieces of information, it is difficult to see how the State could meet its burden to show sufficient indicia of reliability in this case.

Notwithstanding these undisputed findings of fact, the court concluded that the informant's tip provided reasonable suspicion because it had sufficient indicia of reliability. It stated in its conclusions of law that:

> [T]here was corroborating information suggesting the informant's tip to law enforcement was accurate. Specifically in this case, the corroborating information was the location, identification of the suspect, and the suspect's physical description and clothing description. The implication is that the defendant was seen wearing the jacket by the informant on the day in question as relayed to police.[35]

---

[34] Clerk's Papers at 50.

[35] Id. at 52.

8

The court concluded that the tip showed sufficient indicia of reliability because it satisfied two factors of the test. First, the court believed it satisfied the factor of "whether the officers can corroborate any details of the informant's tip."[36] Second, the court concluded the tip was reliable because it suggested that "the informer's information was obtained in a reliable fashion."[37] We disagree with both conclusions.

The court's first conclusion is erroneous because it relies on an overbroad statement of the law. It is incorrect that corroborating "any details of the informant's tip" provides indicia of reliability.

According to the United States Supreme Court in Florida v. J.L., merely corroborating a suspect's location and description does not provide sufficient indicia of reliability for reasonable suspicion.[38] In that case, an anonymous caller reported that a young man at a bus stop was carrying a gun.[39] Officers went to the bus stop, found a young man who matched the tip's description, frisked him, and found a gun.[40] The officers did not observe any suspicious or threatening behavior before frisking J.L.[41]

---

[36] Id. (quoting State v. Lee, 147 Wn. App. 912, 918, 199 P.3d 445 (2008)).

[37] Id. (quoting Marcum, 149 Wn. App. at 904).

[38] 529 U.S. 266, 271-72, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000).

[39] Id. at 268.

[40] Id.

[41] Id. at 270-71.

The Supreme Court held that the officers lacked reasonable suspicion because the anonymous tip in J.L. lacked sufficient indicia of reliability.[42] While the officers were able to corroborate J.L.'s location and appearance, this was insufficient to provide indicia of reliability. The court held that corroboration must show that "a tip [is] reliable in its assertion of illegality, not just in its tendency to identify a determinate person."[43]

Thus, it sweeps too broadly to say that corroborating "any details of the informant's tip" provides indicia of reliability. Instead, under J.L., officers must corroborate details indicating a crime.

Here, the detectives were able to corroborate only Johnson's identity, location, and description. Just as in J.L., this showed that the tip was reliable in "identify[ing] a determinate person"—Johnson. But when the detectives arrived on the scene, they observed nothing that corroborated that a crime had been or was about to be committed. They did not observe anyone else at the scene. They did not observe that Johnson had a firearm until they stopped and frisked him. And there was nothing else that allowed the detectives to corroborate the tip. Accordingly, this record does not support the determination by the trial court that this corroboration provided indicia of reliability.

The trial court also concluded that the detectives' corroboration showed "that the informer's information was obtained in a reliable fashion." We disagree.

---

[42] Id.

[43] Id. at 272.

10

In reaching this conclusion, the court relied on the fact that the detectives corroborated Johnson's description and this implied "that the defendant was seen wearing the jacket by the informant on the day in question as relayed to police." But this fails to show that the informant reliably obtained the information.

The United States Supreme Court has held that when a tip accurately predicts a suspect's future movements, this shows that the informant reliably obtained the information.[44] Predicting future movements suggests "familiarity with [a] person's affairs" or insider knowledge.[45]

But here, as in J.L., the tip did not provide any predictive information. Rather, it merely gave Johnson's description and location. Thus, the corroborated details failed to establish that the informant reliably obtained the information.

We acknowledge that this case does differ somewhat from J.L. In that case, the caller did not disclose how he knew J.L. had a gun.[46] In the present case, the informant claimed to be an eyewitness to this event. And courts consider eyewitness information more reliable.[47] But being an eyewitness does not necessarily suggest the same level of reliability that predicting future movements does. While eyewitness information is more reliable than non-

---

[44] White, 496 U.S. at 332.

[45] J.L., 529 U.S. at 271.

[46] Id.

[47] Navarette, 134 S. Ct. at 1689.

11

eyewitness information, it lacks the suggestion of familiarity or insider knowledge that predictive information provides.

This case is closer to this court's recent decision in State v. Cardenas-Muratalla.[48] In that case, officers received a 911 call reporting that a man had a gun in a high crime area of downtown Seattle.[49] The 911 caller reported only that the man had a gun, and stated that while the man had shown the caller the gun, he had not threatened the caller.[50]

The officers responded and saw Jose Cardenas-Muratalla, who matched the report's description.[51] One officer testified that Cardenas-Muratalla looked surprised when he saw the officer.[52] Another officer testified that the only suspicious behavior she saw was when Cardenas-Muratalla walked away from the officers, and did not obey an order to stop.[53]

In that case, this court held that there was no reasonable suspicion to stop Cardenas-Muratalla.[54]

This case resembles Cardenas-Muratalla. In both cases, officers received a tip that the suspect was carrying a gun. Officers responded and saw a suspect

---

[48] 179 Wn. App. 307, 319 P.3d 811 (2014).

[49] Id. at 310.

[50] Id. at 317.

[51] Id. at 310.

[52] Id.

[53] Id. at 310-11.

[54] Id. at 317.

who matched the tip's description. The suspect looked surprised and walked away when he saw the officers. The Terry stop followed.

One factor that distinguishes the present case is that Johnson reportedly engaged in criminal activity. In Cardenas-Muratalla, the suspect only showed his gun to the caller, in a way that the caller specifically said was not a threat.[55] Thus, the court held that the caller did not report a crime.[56]

In contrast, in this case, Johnson allegedly flashed his gun during a heated argument with a female. Depending on the circumstances, doing so could constitute a form of assault, a serious crime.

The seriousness of the offense is one factor to consider in the totality of the circumstances.[57] Thus, the fact that Johnson reportedly "flashed" a gun is important to the analysis.

But the present case also has another distinguishing factor. In Cardenas-Muratalla, the tip came from a 911 caller.[58] In this case, a paid informant supplied the information.

Paid informants are less credible than citizen informants.[59] Courts give more weight to reports from "ordinary citizens who have been the victim of or

---

[55] Id. at 317.

[56] Id. at 316-17.

[57] Id. at 313.

[58] Id. at 310.

[59] See, e.g. Lee, 147 Wn. App. at 919; Kennedy, 107 Wn.2d at 8.

witness to criminal conduct" than they do to "information from compensated informants from the criminal subculture."[60]

A citizen witness generally "acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety."[61] In contrast, a paid informant's motivations may be unclear. An informant may be motivated by payment, a desire to curry favor with law enforcement, or a number of other reasons.

Accordingly, the fact that the tip about Johnson came from a paid FBI informant makes it less reliable.

In sum, we conclude that the informant's tip did not have sufficient indicia of reliability to provide reasonable suspicion. The detectives provided no information about the informant's reliability or track record, and the detectives were able to corroborate only innocuous details. While the informant claimed to be an eyewitness, he was also a paid informant. Under these circumstances, the tip lacked sufficient indicia of reliability to provide reasonable suspicion for the detectives to stop Johnson.

The remaining circumstances in this case also do not provide for reasonable suspicion. Under the totality of the circumstances, the fact that Johnson looked surprised when he saw the officers and walked away, and that he was reported to have "flashed" a gun during an argument did not create reasonable suspicion. Thus, the detectives lacked a reasonable, articulable

---

[60] Lee, 147 Wn. App. at 919.

[61] Id. (quoting 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.4(a), at 208 (3d ed.1996)).

14

suspicion that Johnson had committed or was about to commit a crime. Accordingly, they had no basis to conduct a valid Terry stop.

The State argues that the detectives did have reasonable suspicion to stop Johnson. More specifically, it argues that the informant in this case was reliable because one of the detectives had met him, that the seriousness of the alleged offense provided reasonable suspicion, and that under a recent Supreme Court decision the informant's tip was reliable. We disagree with each of these arguments.

First, the State argues that the informant in the present case was more reliable than the informants in cases like J.L. and Cardenas-Muratalla. Specifically, the State argues that one of the detectives had met the informant before and this made the informant reliable.

But the court's written findings of fact state that:

> [n]o information was provided by police regarding the identity of the paid informant who furnished the information to law enforcement, nor the informant's track record as a paid informant or the informant's reliability.[62]

And the court later concluded that "no evidence was presented regarding the reliability of the informant."

With this argument, the State implicitly challenges these findings on appeal. But the State did not challenge the findings by a cross-appeal, and unchallenged findings are verities on appeal.[63] Because the unchallenged

---

[62] Clerk's Papers at 50.

[63] Campbell v. Emp't Sec. Dep't, 180 Wn.2d 566, 573, 326 P.3d 713 (2014).

findings show that no information was presented about the informant's reliability, the State's argument that the informant was reliable fails.

Further, the State's argument is unpersuasive. In <u>Cardenas-Muratalla</u>, a 911 caller reported the information. In the present case, a paid informant reported the information. As we stated earlier in this opinion, paid informants are *less* credible, not more credible, than citizen informants.[64] Thus, the State fails to establish the reliability of the informant in this case.

The State also argues that the officers in this case had reasonable suspicion because of the seriousness of Johnson's reported offense. The State relies mainly on <u>State v. Franklin</u> for this argument.[65] In that case, a citizen approached a police officer and told him that he had seen a man with a gun in a nearby public bathroom.[66] The citizen did not allege that the man was displaying the gun threateningly.[67]

The court in <u>Franklin</u> decided that the "potential danger to the public posed by an armed individual" and the citizen's information gave the officer reasonable suspicion to stop the man.[68] But <u>Franklin</u> was decided in 1985, 15 years before <u>J.L.</u>

---

[64] <u>Lee</u>, 147 Wn. App. at 919.

[65] 41 Wn. App 409, 704 P.2d 666 (1985).

[66] <u>Id.</u> at 410.

[67] <u>Id.</u>

[68] <u>Id.</u> at 413.

Under J.L., a report of possession of a gun does not, by itself, create reasonable suspicion.[69] Thus, the State's reliance on Franklin is misplaced.

As we discussed earlier, the seriousness of the reported offense is one factor to consider in the totality of the circumstances.[70] And a report of a possible assault is a serious offense. But the serious nature of an offense is merely one factor that courts consider in evaluating the totality of the circumstances of a case. And under the totality of the circumstances, it is insufficient to provide reasonable suspicion in this case, given the tip's lack of sufficient indicia of reliability.

The State also argues that a recent decision by the United States Supreme Court eliminates the need for officers to corroborate an informant's tip by observing predicted behavior or criminal activity. In Navarette v. California, the Court held that a 911 caller's report provided reasonable suspicion for a stop.[71] In that case, the caller said that a truck had run her off the road and gave a description of the truck and its license plate.[72] Officers stopped a truck matching the description.[73]

---

[69] J.L., 529 U.S. at 271-73.

[70] Cardenas-Muratalla, 179 Wn. App. at 313.

[71] __U.S.___, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014).

[72] Id. at 1686-87.

[73] Id. at 1687.

17

The Court held that the report provided reasonable suspicion to stop the truck for several reasons. First, the caller was an eyewitness.[74] The caller also contemporaneously reported the incident.[75] This made her report similar to a present sense impression or an excited utterance, which evidence law treats as reliable.[76] Further, the report was made on the 911 system.[77] The court held that technological advances have made 911 calls more trustworthy because the 911 system can verify callers' information and geographically locate them.[78] Under these circumstances, the court held that officers had reasonable suspicion to stop the truck.[79]

The State argues that Navarette establishes that an anonymous caller no longer needs to give more than an accurate description of a suspect in order to create reasonable suspicion. But Navarette is not analogous to this case.

In Navarette, the reliability of the tip supported reasonable suspicion. As discussed above, three factors supported reliability in that case: the caller was an eyewitness, the report was contemporaneous, and the call was made through 911. Only the first of those factors is present in Johnson's case—the informant here also claimed to be an eyewitness.

---

[74] Id. at 1689.

[75] Id.

[76] Id.

[77] Id.

[78] Id. at 1689-90.

[79] Id. at 1692.

Additionally, Johnson challenges on appeal the finding below that the informant made a contemporaneous report. The court found that the informant had "just witnessed" the incident. But substantial evidence does not support the finding.

One detective testified that he received a call:

[f]rom an FBI agent who told me that he received a phone call from a paid informant that said that there was a disturbance between a male and a female at 18th and Yesler and that there was some arguing going back and forth and that at some point during this argument that the male involved flashed a handgun.[80]

The detective's partner testified that:

[the detective] said that he was speaking to an FBI agent on the telephone who was passing along information that that agent had received from a CI stating that a subject described as a black male in his 30s, about 5'8", short hair, wearing a blue North Face jacket, had apparently been in sort of verbal argument or disturbance in the area of 18th and Yesler. [81]

Thus, neither detective testified that the informant contemporaneously reported the incident to the FBI agent.

We have found nothing in this record to substantiate that the informant contemporaneously reported what the informant saw to the FBI agent. The trial court found that Johnson was wearing the clothes that the informant described, and was at the location the informant described. The court concluded that this implied "that the defendant was seen wearing the jacket by the informant on the day in question as relayed to police." But an implication that the informant

---

[80] Report of Proceedings (July 29, 2013) at 16.

[81] Id. at 37-38.

witnessed Johnson on that day is insufficient to show that the informant made a contemporaneous report to the FBI agent. Accordingly, substantial evidence does not support the finding that the informant had "just witnessed" the incident.

Finally, as discussed previously, the informant in this case was a paid informant, not a concerned citizen, making the informant's tip less reliable than the tip in Navarette.

For these reasons, we hold that the police lacked a reasonable, articulable suspicion that Johnson had committed or was about to commit a crime. Accordingly, the Terry stop was not valid. The weapon the police found must be suppressed.

We reverse the judgment and sentence.

_Cox, J._

WE CONCUR: